[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE THE VERDICT MOTION FOR REMITITTUR AND MOTION FOR REDUCTION OF THE VERDICT DUE TO COLLATERAL SOURCE PAYMENTS
On December 21, 2000, the jury in the above captioned matter returned a verdict of $70,000 in favor of the plaintiff, Sarah Reyes. The jury found that the defendant, Allstate Insurance Company, was liable to the plaintiff for $15,000 in economic damages and $55,000 for non-economic CT Page 3194 damages. The verdict was accepted and ordered recorded by the court,Ballen, J.T.R.
The jury could reasonably have found the following facts. The amended answer of the named defendant, Allstate Insurance Company, admitted that there was an insurance policy in effect which covered the plaintiff for injuries caused by the negligence of an uninsured motorist. The defendant further admitted that an uninsured motorist drove through a red light making contact with the front of the plaintiff's vehicle. The defendant's amended answer further admitted that the uninsured motorist failed to keep his vehicle under proper and reasonable control, failed to apply his brakes in time, although by proper and reasonable exercise of his facilities he could and should have done so, and that he violated Section14-299 of the Connecticut General Statutes by driving through a red light. The defendant left the plaintiff to her proof concerning her injures, damages and losses.
The plaintiff, age 63, testified through an interpreter that her car was struck by an uninsured driver who admitted fault for the accident which damaged her car "quite a bit." She felt pain and discomfort in her back, her head hit against a part of the car and she heard and felt a loud crack in her neck. Her pain became worse and she went to Dr. Zolie Sternberg about a week after the accident. Dr. Steinberg saw and treated the plaintiff for approximately eight months and concluded that she was suffering from residual partial permanent disability of the cervical spine which he estimated to be 8% and residual partial permanent disability of the lumbar sacral spine which he estimated to be 6%. He directly related both permanent disabilities to the motor vehicle accident on January 4, 1995. (Plaintiff's exhibit #4).
At trial the plaintiff related that her neck still hurts, she has pain in her back and legs and a numbness in the fingers of both hands like pins in her fingers. She stated that at times the pain is so severe it prohibits her from doing anything. She asserted that she has "certain limitations of movement" in her neck and low back. She alleged that she could not now do many activities that she did before the accident such as playing with her grandchildren, taking walks, driving, climbing stairs, carrying groceries and performing other household tasks. She stated that she is limited in her activities, has a fear of driving and cannot drive or sit in a car for long distances. She denied any prior or subsequent accidents. Her testimony, demeanor, and appearance were credible.
Dr. Sternberg retired from the practice of medicine and the plaintiff visited Dr. Eric Katz, an orthopaedic surgeon, who found that the plaintiff had a permanent partial impairment to the lumbar sacral spine of 5% and a permanent partial impairment to the cervical spine of 5%. Dr. CT Page 3195 Katz testified at trial that both permanencies were causally related to the motor vehicle accident of January 4, 1995. (Plaintiff's exhibit #12). Dr. Katz further testified that in his opinion, based upon a reasonable degree of medical certainty, that the patient would have acute flair ups. "There will be periods that will cause her to come back to my office".
The plaintiff's husband, Raymond Reyes, testified that he observed his wife after the accident and that she walked "funny" and "stiff", that she complained of pain in her neck and lower back and that he gave her the prescribed medication, heat treatments, and massages. He stated that he often took her to the doctors and he now does work around the house which she used to do.
The defendant rested its case without offering any witnesses or testimony.
"In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict must do the same. . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and grant a new trial. . . . A mere doubt of the adequacy of the verdict is an insufficient basis for such action. . . . A conclusion that thejury exercised merely poor judgment is likewise insufficient. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that thejury were influenced by partiality, prejudice, mistake or corruption." Gladu v. Sousa,252 Conn. 190, 192-193 ___ A.2d ___ 2000).
"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court. . . . The amount of a damage award is a matter peculiarly within CT Page 3196 the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply . . . is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption . . ." Gaudio v. Griffin HealthServices Corp., supra, 249 Conn. 550-551.
There is no dispute that the plaintiff incurred $5,026.75 in medical expenses. In his October 23, 2000 medical report, plaintiff's Exhibit 12, Dr. Katz stated that "the estimated cost of such future treatment is $1,500.00. In his court testimony Dr. Katz reaffirmed his opinion that the estimated cost of plaintiff's future treatment is $1,500.00. Therefore, the evidence at trial can only support $5,026.75 in past economic damages and $1500.00 in future economic damages for a total of $6,526.75 in economic damages.
"A verdict may be excessive if it includes an award for an element of damages which was not proven. When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. Id., 554. Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." Gaudio v. Griffin HealthServices Corp. supra 249 Conn. 523, 554.
In light of the testimony presented at trial, the court does not find that the verdict was unsupported by the evidence, except as to the amount of future economic damages, nor can the court conclude that the verdict was so excessive as to shock the conscience. Accordingly, the defendant's Motion to Set Aside the Verdict is denied. However, the defendant's Motion for Remitittur is granted and the economic damage award is ordered reduced in the amount of $8,473.25 to $6,526.75.
Judgment may enter for the plaintiff in the amount of $61,526.75 less a Collateral Source Reduction in the amount of $4,334.99 as agreed to by the parties for a net judgment of $57,191.76 plus costs.
BALLEN, J.T.R. CT Page 3197